IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED

2026 MAY -6  AM 9: 53

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
              DEPUTY

CODY EAVES,
    Petitioner,

v.

CHARISMA EDGE, *Warden*, FCI La Tuna,
    Respondent.

§
§
§
§
§
§
§
§

Cause No. EP-25-CV-450-DCG

## MEMORANDUM OPINION AND ORDER

Petitioner Cody Eaves, Federal Prisoner Number 52552-510, challenges the execution of his sentence through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 5. His opposed petition is dismissed because he failed to exhaust his administrative remedies.

## BACKGROUND

Eaves is a 29-year-old prisoner confined at the La Tuna Federal Correctional Institution in Anthony, Texas, which is within the jurisdiction of this Court. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 52552-510, last visited May 4, 2026). His current projected release date is February 10, 2027. *Id.*

Eaves pleaded guilty on July 11, 2025, to conspiracy to distribute methamphetamine in a case styled United *States v. Eaves*, 1:23-cr-67-JPW (M.D. Penn.). *See* Resp't's Resp., Ex. 1 (Decl. of Lolita Dorsett), and Attach. 2 (Judgment in a Criminal Case), ECF No. 9-2. He was sentenced to 36 months' imprisonment followed by three years' supervised release.

Eaves alleges that Respondent Chrisma Edge has not properly calculated his Good Time Credits (GTCs) and First Step Act Earned Time Credits (FTCs) which are used to determine his release date. Pet'r's Pet., ECF No. 5 at 1. Specifically, he claims that he is entitled to FTCs for the time he spent in custody between the day he pleaded guilty on October 24, 2024, and the day

before he was sentenced on July 11, 2025. *Id.* He further claims that he has not received a Second Chance Act placement, which could allow him to spend up to 365 days in a residential reentry center and six months in home confinement. *Id.* at 2. He argues that he is not required to exhaust his administrative remedies because this action involves his unlawful and illegal imprisonment in violation of the Constitution and laws of the United States. *Id.* at 5. He asks the Court to issue an order directing Respondent to "properly provide all Good Time, First Step Act, and Second Chance Act Credits" to which he believes he is entitled. *Id.*

## STANDARD OF REVIEW

A prisoner's "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a prisoner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

## ANALYSIS

### A. Exhaustion

The Fifth Circuit has long held that the Bureau of Prisons (BOP) should be permitted to administratively rectify an error if it fails to properly calculate a sentence. *Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991). "In the event that a prisoner feels he has been improperly refused credit for time he has served in … custody, the prisoner must first 'seek administrative review of the computations of [his] credit, and, once [he has] exhausted [his] administrative remedies, [the] prisone[r] may only then pursue judicial review of these computations.'" *United States v. Setser*,

607 F.3d 128, 133 (5th Cir. 2010) (quoting *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992)); *see also Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018) (holding that "dismissal for lack of jurisdiction was appropriate because [the petitioner] failed to show that he exhausted his sentencing credit claim fully through the multi-step BOP exhaustion procedure prior to filing his § 2241 petition.").

While there are exceptions to the exhaustion requirement "where the available administrative remedies either are unavailable or wholly inappropriate to the relief a prisoner seeks, or where the attempt to exhaust such remedies would itself be a patently futile course of action," such exceptions apply only in "extraordinary circumstances." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citations omitted). And a petitioner bears the burden of demonstrating such circumstances.

Eaves does not claim that he exhausted his BOP administrative remedies or that any exception to the exhaustion requirement applies. *See* Pet'r's Pet., ECF No. 5. His prison records show "that, as of December 17, 2025, [he] had not submitted any formal requests or appeals (forms BP-9, BP-10, or BP-11)." *See* Resp't's Resp., Ex. 2 (Decl. of Johnna Burrows), ECF No. 9-3 at ¶ 9. He argues that he need not exhaust because habeas corpus under § 2241 is a constitutional right and an exhaustion requirement would abrogate that right. Pet'r's Pet., ECF No. 5 at 5. He is wrong. *Setser*, 607 F.3d at 133.

Eaves "must first pursue all available administrative remedies" before seeking relief under § 2241. *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). And his exhaustion in this context means "proper exhaustion," including his compliance with all administrative deadlines and procedures established by the BOP. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion in the context of the Prison Litigation Reform Act).

3

The Court finds that Eaves has failed to exhaust his administrative remedies or carry his burden of proving the futility of an administrative review. *Fuller*, 11 F.3d at 62 (explaining federal prisoners must exhaust "administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241."). It notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Eaves had properly exhausted his claims, the Court would not grant him the § 2241 relief he seeks.

### B. Alternatively, Eaves's Petition Lacks Merit

Eaves alleges that Warden Edge has not properly calculated his Good Time Credits ("GTCs"), First Step Act Earned Time Credits ("FTCs"), and Second Chance Act "credits." Pet'r's Pet., ECF No. 5. He argues that he should have earned FTCs between October 24, 2024, and July 11, 2025. *Id.* at 3.

### (1) Jail Credits

After a district court sentences a federal offender, the BOP has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992) (citing 18 U.S.C. § 3621(a)). The BOP must credit a federal prisoner for the days spent in pretrial custody prior to the imposition of a sentence if that time is not credited against another sentence. 18 U.S.C. § 3585(b); *Leal v. Tombone*, 341 F.3d 427, 428 (5th Cir. 2003) ("The Attorney General, through the Bureau of Prisons (BOP), determines what credit, if any, will be awarded to prisoners for time spent in custody prior to the commencement of their federal sentences.").

In this case, the BOP gave Eaves 264 days of jail credit for the time he spent in detention before his sentencing (April 4, 2023, to April 7, 2023, and October 24, 2024 to July 10, 2025) and the period between his sentencing and his arrival at his designated BOP facility (July 11, 2025, to

August 19, 2025).  Resp't's Resp., ECF No. 9-2 at 7; 18 U.S.C. § 3585(b)(1). The BOP also determined that Eaves's full-term expiration date on his 36-month sentence was October 20, 2027, without the application of any GCTs or FTCs. *Id.*, Ex. 2 (Decl. of Lolita Dorsett), ECF No. 9-2 at ¶ 5.

### (2) Good Time Credits (GTCs)

A prisoner serving a term of imprisonment of more than one year may receive 54 days of GTCs for each year of imprisonment once he is sentenced. 18 U.S.C. § 3624(b)(1).

Based on his 36-month sentence, Eaves is projected to receive 162 days of GTCs (3 X 54 = 162) if he maintains a clean disciplinary record. Resp't's Resp., Ex. 1 (Decl. of Lolita Dorsett), ECF No. 9-2 at ¶ 6. Applying these GCTs to his full-term expiration date results in a conditional release date via GCTs of May 11, 2027.

### (3) First Step Act Earned Time Credits (FTCs)

The First Step Act allows an eligible prisoner to earn FTCs toward time in pre-release custody or supervised release. 18 U.S.C. § 3632(d)(4)(A). But it requires a prisoner to first undergo "a risk and needs assessment" to establish whether he has a "minimum, low, medium, or high risk for recidivism." *Id.* § 3632(a)(1). It gives qualifying prisoners the opportunity to earn ten days of FTCs for every 30 days of successful participation in Evidence Based Recidivism Reduction ("EBRR") programs and Productive Activities ("PAs"). *Id.* § 3632(d)(4)(A)(i). It allows qualifying offenders at a "minimum" or "low risk" of recidivating to earn an additional five days of FTCs if they do not increase their risk levels over two consecutive assessments. *Id.* § 3632(d)(4)(A)(ii). It permits qualifying inmates to apply FTCs toward pre-release placement in a residential reentry center or home confinement. 18 U.S.C. § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c). And, at the

discretion of the Director, it permits qualifying prisoners to apply FTCs toward their early release to supervision. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).

Eaves was not eligible to earn FTCs while in official detention between his arrest and the commencement of his term of imprisonment. 18 U.S.C. § 3632(d)(4)(B) (explaining an inmate may not earn FTCs "during official detention prior to the date that the prisoner's sentence commences under section 3585(a)."). "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." *Id.* § 3585(a). In other words, Eaves was not eligible to earn FTCs until he was (1) sentenced, and (2) in custody awaiting transportation to a BOP designated facility.

Eaves arrived at his BOP designated facility on August 19, 2025. Resp't's Resp., Ex. 1 (Decl. of Lolita Dorsett), ECF No. 9-2 at ¶ 15. He underwent a risk and needs assessment and began accruing FTCs immediately upon his arrival. As of January 22, 2026, the date of Eaves' most recent FTC assessment, he had earned a total of 50 FTCs. *Id.* at ¶ 16. In accordance with BOP policy, FTCs are not applied toward an early transfer to supervised release until the FTCs equal the remainder of the inmate's term of imprisonment. With application of 50 days of FTCs, Eaves' projected release date was adjusted from May 11, 2027, via GTCs, to March 22, 2027, via FTCs. It was subsequently re-adjusted to his current projected release date of February 10, 2027.

In accordance with BOP policy, Eaves may apply additional FTCs toward his early transfer to supervised release. Consequently, his conditional release date via FTCs is December 12, 2026. *Id.* at ¶ 17.

**(4) Second Chance Act**

The Second Chance Act authorizes the BOP to *consider*, to the extent practicable, placing

6

inmates nearing the end of their sentences in pre-release community confinement. 18 U.S.C. § 3624(c). Importantly, the statute only requires the BOP to *consider* placing an inmate in pre-release custody for up to twelve months or in home confinement for up to six months. It does not *require* the BOP to make such a placement. The Second Chance Act does not create any additional "credits."

Moreover, the BOP is responsible for designating "the place of the prisoner's imprisonment." *Id.* § 3621(b). Consequently, the BOP—not a court—is the proper place to direct a request for placement in a residential reentry center or in home detention. *United States v. Sneed*, 63 F.3d 381, 388 n.6 (5th Cir. 1995) (citing 18 U.S.C. § 3624(c) (providing that the BOP has the authority to "place a prisoner in home confinement")). Additionally, release from institutional custody to a residential reentry center or home detention "is a change in conditions of confinement and not cognizable under § 2241." *Maldonado v. Rule*, No. 4:24-cv-0971-P, 2025 WL 476256, at *2 (N.D. Tex. Feb. 11, 2025) (citing *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) (explaining a challenge to exclusion from program allowing home confinement is more properly brough as a *Bivens* action)).

The BOP is considering Eaves for up to 200 days in pre-release custody pursuant to the Second Chance Act. Resp't's Resp., Ex. 1 (Decl. of Lolita Dorsett), ECF No. 9-2 at ¶ 17.

### (5) Summary

In summary, Eaves does not explain how the BOP erred in calculating his projected release date—and the Court, after reviewing the record, sees no errors. In addition, Eaves has not provided evidence that he participated in and successfully completed any EBRR programs or PAs before his receipt in BOP custody. His conclusory allegations that Warden Edge miscalculated his GTCs, ETCs, and improperly denied him early placement in a community-based residential facility under

7

the Second Chance Act are "insufficient for federal habeas relief [because he] has not met Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, which requires a petitioner to plead facts in support of his claims." *Murphy v. Dretke*, 416 F.3d 427, 436–37 (5th Cir. 2005); *see also Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("conclusory allegations do not raise a constitutional issue in a habeas proceeding"). His argument that he is entitled to Second Chance Act "credits" is based on the erroneous premise that such credits exist.

## CONCLUSIONS AND ORDERS

The Court concludes that Eaves has failed to exhaust his administrative remedies. It further concludes that his claims lack merit as he has failed to explain how the BOP erred in calculating his projected release date. The Court accordingly enters the following orders:

**IT IS ORDERED** that Petitioner Cody Eaves' "Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241" (ECF No. 5) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED.**

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**IT IS SO ORDERED.**

SIGNED this 5th day of May 2026.

**DAVID C GUADERRAMA**
**SENIOR UNITED STATES DISTRICT JUDGE**

8